Receipt number AUSFCC-9469126

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MICHAEL T. FLYNN,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | Case No.: __24-516C__ |

# COMPLAINT

1. Lt. Gen. Michael T. Flynn (ret.) ("Gen. Flynn") contests the United States Army's determination that Gen. Flynn owes a debt to the United States, which was assessed in contravention to Department of Defense regulations and without any process provided to Gen. Flynn. The Defense Finance Accounting Service has already started unlawfully collecting this alleged debt from Gen. Flynn's retirement pay.

2. The United States Army's determination that Gen. Flynn owes a debt to the United States was, and is, factually erroneous and contrary to law. Indeed, at no point before or since the United States Army's determination has Gen. Flynn received proper notice, due process, or meaningful review of the United States Army's allegations against him, as is required by federal law and the United States Constitution.

# PARTIES

3. Plaintiff, Gen. Flynn, is an individual who is a resident and citizen of the State of Florida. General Flynn served his country in the United States Army for

thirty-three years (1981-2014). He retired in 2014 after a distinguished military career.

4. Defendant United States of America includes all government agencies and departments responsible for the wrongful acts of its employees acting within the scope or office of their employment relating to Plaintiff's alleged violation of the Emoluments Clause. U.S. CONST. art. 1, § 9; 37 U.S.C. § 908.

5. Defendant the United States Department of the Army (the "Army") is a military department of the United States Department of Defense.

6. Defendant The Defense Finance and Accounting Service ("DFAS") is an agency of the United States Department of Defense.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over Gen. Flynn's federal claims under 28 U.S.C. § 1491, because they arise under federal law, more than $10,000 is in dispute, and the United States is a defendant.

8. This Court has personal jurisdiction over the federal government defendant and this venue is proper. 28 U.S.C. §§ 1491, 1341.

## FACTS COMMON TO ALL CLAIMS

9. On April 28, 2022, Craig Schmauder, Acting Principal Deputy General Counsel of the Army, issued two memoranda attesting to an alleged debt owed by Gen. Flynn to the United States. *See* Exhibits 1 & 2. These memoranda were not provided to Gen. Flynn at this time. Rather, they were only provided upon Gen. Flynn's request made in June 2022. DFAS provided the documents in October 2022.

These documents became part of his request for a review which was not decided until the end of January 2023.

10.  At no time was Gen. Flynn notified of this alleged debt or given an opportunity to be heard, whether in person or by writing, about whether this debt was legitimate or not. Indeed, the Army never notified or contacted Gen. Flynn during its alleged investigation of this debt, its process of determining the debt was owed, or its referral of the alleged debt to the Defense Finance and Accounting Service for collection.

11.  On May 5, 2022, DFAS sent Gen. Flynn a letter notifying him only that he was "found to be in violation of the Emoluments Clause because [he] received compensation for a speaking engagement in December 2015 from a foreign government without seeking the required approval." *See* Exhibit 3.

12.  Pursuant to the requirements contained in DFAS's May 5, 2022, letter, on June 3, 2022, Gen. Flynn submitted a timely request for documents. *See* Exhibit 4.

13.  Despite Gen. Flynn's timely request for documents in June, which should have stayed any collection of this alleged debt according to DFAS's May 5, 2022, letter, DFAS subsequently began reducing Gen. Flynn's retirement pay due to the alleged debt.

14.  On September 12, 2022, Gen. Flynn requested the return of these funds that were improperly withheld. *See* Exhibit 5.

15. On September 28, 2022, DFAS admitted it had improperly begun to withhold funds from Gen. Flynn's pay, despite his request for documents, which should have stayed the collection. *See* Exhibit 6.

16. DFAS's September 28, 2022, letter then went on to state:

> The scope of a debt review [by DFAS] is limited to determining whether: a) the applicable Service made a determination that LTG Flynn violated the Emoluments Clause; and b) that the amount of the debt matches the debt amount established by the Component concerned. In its review, DFAS will not look behind the Service's determination as to whether or not a violation of the Emoluments Clause occurred.

*Id.*

17. On October 20, 2022, DFAS sent another letter explaining that it did not and does not intend to perform any type of meaningful review before it once again began to withhold Gen. Flynn's retirement pay. DFAS provided exactly four (4) responsive records with this letter. These records were two Army internal memoranda and two DFAS letters. *See* Exhibit 7. Other than these four documents, DFAS provided no other indication of support for the Army's determination Gen. Flynn had violated the Emoluments Clause and therefore owed a debt of $38,557.06 to the United States that would be taken out of his retirement pay. *Id.*

18. In this October 20, 2022, letter, DFAS restated that "[t]he scope of a debtor's hearing before DFAS is limited to a review of the amount and/or validity of the debt, or the rate of collection." *Id.*

19. By "validity of the debt", DFAS meant only whether the Army found that a debt was owed. As stated previously, DFAS declared that it would not look behind

4

the Army's determination to question if the debt actually exists. *See generally*, Exhibits 6 & 7.

20. At no point has the Army provided any due process to Gen. Flynn or even communicated directly with Gen. Flynn regarding this alleged debt. Rather, the Army made a unilateral determination Gen. Flynn had violated the Emoluments Clause, sent that determination to DFAS, and instructed DFAS recover the amount of the determination, including by taking from Gen. Flynn's retirement income, if necessary.

21. To DFAS's credit, DFAS attempted to provide a shadow of review, but by limiting Gen. Flynn's request for documents to the four provided and limiting review only to whether the Army made a determination, regardless of the determination's merits or legality, neither DFAS nor the Army has provided any factually or legally sufficient review to Gen. Flynn.

22. On November 22, 2022, Gen. Flynn sent a letter directly to the Army requesting documents and notifying the Army of its lack of due process thus far. *See* Exhibits 8 and 9.

23. The Army responded on December 1, 2022, that it would take some time to gather the relevant documents to provide to Gen. Flynn. *See* Exhibit 10.

24. On December 2, 2022, Gen. Flynn submitted his request for review to both DFAS and the Army requesting review of the alleged debt in compliance with his due process rights, under both Army regulations and Department of Defense regulations, and the United States Constitution. *See* Exhibit 11.

25. In this request, Gen. Flynn specifically requested both DFAS and the Army review his claim, but the Army never responded. Gen. Flynn also sought a stay of any collection of the alleged debt pending forthcoming litigation if such a review should continue to be denied.

26. On January 30, 2023, DFAS denied Gen. Flynn's review. *See* Exhibit 12. Subsequently, DFAS again began to withhold funds from Gen. Flynn's pay.

27. Gen. Flynn now respectfully requests this Court require the United States to return the funds it has taken from him contrary to law and without required due process and reinstate Gen. Flynn's full pension and retirement pay.

## Regulations at Issue

28. The Army's memorandum to DFAS on April 28, 2022, specifically points to four authorities that the collection from Gen. Flynn must comply with: (1) 37 U.S.C. § 1007(c); (2) 31 C.F.R. Part 900-904; (3) DOD Federal Management Regulations Part 16; and (4) DOD Directive 5118.05. Taken together, these authorities required due process be provided to Gen. Flynn before any collection action against him was initiated.

29. 37 U.S.C. § 1007(c) states: "Under regulations prescribed by the Secretary concerned, an amount that a member of the uniformed services is administratively determined to owe the United States or any of its instrumentalities may be deducted from the member's pay in monthly installments."

30. Therefore, 37 U.S.C. § 1007(c) states that a debt owed may be deducted from monthly payments, if regulations so provide. This statute, however, does not

6

absolve the Army, DFAS, DOD, or any other agency or department of the United States from providing due process before any such collection is begun.

32. DOD Directive 5118.05 grants some of the authorities and powers necessary to carry out DFAS's functions to DFAS. None of these provisions, however, bear on the requirement that any agency, department, or office within DOD provide meaningful due process to any individual, including Gen. Flynn, before beginning a collection.

32. 31 C.F.R. Part 900-904 specifically requires due process be provided by any agency, including any agency, department, or office of DOD, seeking to administratively offset an alleged debt owed to the United States against an individual. *See* 31 C.F.R. § 901.3(c)(2).

33. 31 C.F.R. § 901.3(c) titled "non-centralized administrative offset" applies to offsets "an agency conducts, at the agency's discretion, internally or in cooperation with the agency certifying or authorizing the payments to the debtor[.]" This regulation appears applicable here where the Army has apparently decided Gen. Flynn owes an alleged debt and has asked DFAS, the agency certifying or authorizing payments to Gen. Flynn in his retirement, to withhold payments to pay the alleged debt.

34. 31 C.F.R. § 901.3(c)(2), however, also specifically states:

"Before requesting a payment authorizing agency to conduct a non-centralized administrative offset, agencies must adopt regulations providing that such offsets may occur only after: [t]he debtor has been provided due process as set forth in paragraph (b)(4) of this section; and [t]he payment authorizing agency has received written certification from the creditor agency that the debtor owes the past due, legally

7

enforceable delinquent debt in the amount stated, and that the creditor agency has fully complied with its regulations concerning administrative offset."

35. 31 C.F.R. § 901.3(b)(4) further requires that "such regulations shall provide that offsets may be initiated only after the debtor":

Has been sent written notice of the type and amount of the debt, the intention of the agency to use administrative offset to collect the debt, and an explanation of the debtor's rights under 31 U.S.C. 3716; and

The debtor has been given: The opportunity to inspect and copy agency records related to the debt; [t]he opportunity for a review within the agency of the determination of indebtedness; and [t]he opportunity to make a written agreement to repay the debt.

36. In its memorandum to DFAS, the Army also alludes to this debt being a "recoupment," which may bring 31 C.F.R. § 901.3(b)(4)(iii) into effect. *See* Exhibit 5.

37. 31 C.F.R. § 901.3(b)(4)(iii), however, provides: "Agency regulations may provide for the omission of the procedures set forth in paragraph (a)(4)(ii) of this section when … [t]he offset is in the nature of a recoupment[.]"

38. A recoupment allows one party to reduce or eliminate a claim against it due to an obligation owed to that party by the other party. A recoupment is also generally "the getting back or regaining of something[.]" *See* BLACK'S LAW DICTIONARY (11th ed. 2019). Neither of these definitions of a recoupment is applicable here.

39. The Army did not overpay Gen. Flynn $38,557.06. Rather, the Army erroneously determined Gen. Flynn was improperly paid that amount by a foreign government or foreign government-controlled entity and wishes to obtain that amount from Gen. Flynn's retirement pay.

40. The Army has sought to use DFAS to implement an administrative offset against Gen. Flynn's retirement. The Army and DFAS are requiring either (1) Gen. Flynn to pay the alleged debt in a lump sum, or (2) DFAS to withhold a sum from each of Gen. Flynn's retirement payments to pay the alleged debt. Neither of these plans for recovery involves regaining something that the United States previously had.

41. Indeed, the Army's request is clear: Gen. Flynn was paid funds from a source that was not the United States, and now the Army wants those funds to be offset against Gen. Flynn's retirement pay from the United States. Therefore, this is plainly not an action for recoupment, and 31 C.F.R. § 901.3(b)(4)(iii) is not applicable.

42. The regulations the Army relies upon to confiscate Gen. Flynn's retirement pay explicitly require that any regulation implemented by DOD or any of its sub-components, including the Army, provide due process to the individuals involved before any collection begins.

43. Volume 16, Chapter 4, Section 6.1, of the DOD Financial Regulation Management ("FMRs") requires that service members, active or retired, be provided with "notice and an opportunity for review, prior to the initiation of debt collection unless otherwise required by statute." Volume 16, Chapter 4, Section 3.1.4 of the DOD FMRs also requires that debtors other than service members be "afforded the opportunity to dispute a debt prior to the initiation of involuntary offset to collect indebtedness due to the U.S. Government."

44. These provisions specifically find and guarantee that both service members and other debtors are entitled to "due process" which, at a minimum under the Army's own regulations, requires the opportunity to know the real alleged basis for the debt and an opportunity to dispute the reason or reasons alleged prior to the initiation of involuntary offset. The review offered by DFAS—which DFAS admitted did not look behind the Army's determination as to whether or not a violation of the Emoluments Clause occurred—is clearly not such an opportunity to understand the basis of or meaningfully disputing the debt.

45. Rather, DFAS has made it clear it was rubber stamping the Army's determination. Whether retired General Flynn is deemed to be a service member or other debtor under applicable regulations, such a limited review is blatantly not in compliance with regulatory or constitutional due process requirements, 31 C.F.R. § 901.3(c) or the DOD FMRs.

46. Volume 16, Chapter 4, Section 3.1.6 of the DOD FMRs further provides that a person alleged to owe a debt to the United States may request a hearing, which will stay the collection of the alleged debt until a post-hearing determination is made.

47. Accordingly, General Flynn submitted his timely request for a review and a hearing to both the Army and DFAS on December 2, 2022, despite DFAS's letter notifying him that its review will be "limited" and therefore will not comport with due process requirements. Yet, neither DFAS nor the Army responded or held a hearing.

48. Volume 16, Chapter 4, Section 3.2.1 specifically requires that the hearing petition be filed in accordance with the requirements listed in the Debt Collection Office ("DCO") requirements outlined in the debt notice letter. There was, however, no notice from the DCO or other DOD component to Gen. Flynn regarding his alleged debt. Indeed, no federal governmental entity other than DFAS contacted Gen. Flynn about his alleged debt or notified him of any ability to challenge the validity of the alleged debt.

49. Therefore, Gen. Flynn filed his request for hearing and review in compliance with the requirements of Volume 16, Chapter 4, Section 3.2.1.

50. Following the denial of his request for review, Gen. Flynn brings this case seeking the due process that he has not yet received, and the return of his funds that were illegally exacted.

## CAUSES OF ACTION

### COUNT I
### Illegal Exaction

51. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

52. In order "[t]o allege an illegal exaction within this Court's subject-matter jurisdiction, a complaint must contain nonfrivolous factual allegations that the plaintiff is entitled to recover money for the government's purported illegal action." *Gulley v. United States*, 150 Fed. Cl. 405, 418 (2020).

11

53. An illegal exaction claim need not identify a money-mandating statute. *Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020) (concluding that the Court of Federal Claims can "assume[ ] jurisdiction over statutory illegal exaction claims with no regard for whether the statutes [a]re 'moneymandating'"); *see also Perry v. United States*, 149 Fed. Cl. 1, 32 (2020) (holding that "there is no basis to engraft money-mandating requirements onto illegal exaction claims").

54. As Gen. Flynn alleges above, the Army determined he owed a debt to the United States and directed DFAS to recover the alleged debt from Gen. Flynn's retirement pay. DFAS has already begun to withhold funds from Gen. Flynn's monthly retirement pay due to this determination. Therefore, the United States is currently retaining Gen. Flynn's funds.

55. At no point in the process did the DOD, the Army, or DFAS provide any of the process required by 37 U.S.C. § 1007, other applicable regulations, or the Constitution, to Gen. Flynn.

56. Therefore, Gen. Flynn requests this Court invalidate the Army's determination that Gen. Flynn owes a debt to the United States and return his illegally exacted funds.

## PRAYER FOR RELIEF

57. Plaintiff respectfully requests this Court enter a judgment in his favor and grant relief against the United States as follows:

   a. Compensatory damages in an amount to be determined at trial to include all withdrawals made by DFAS from Gen. Flynn's retirement income;

b. A permanent injunction barring the Army, DFAS, or any other entity under the United States from continuing to deduct any amount from Gen. Flynn's retirement pay relating to the alleged violation of the Emoluments Clause;

c. An order declaring the Army's determination of an alleged debt owed to the United States by Gen. Flynn is invalid;

d. To the extent permissible by law, reasonable attorneys' fees and costs; and

e. Any other relief the Court deems proper.

Dated: April 4, 2024

MICHAEL T. FLYNN
*By Counsel*

Respectfully submitted,

_____
Jesse R. Binnall, Counsel of Record
Matt M. Dummermuth, of counsel
Shawn M. Flynn, of counsel
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
matt@binnall.com
shawn@binnall.com

*Attorneys for Plaintiff Michael T. Flynn*